UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEVEN D. ORR,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, et al.,<br><br>Defendants. | Case No. 2:18-cv-01558-GMN-BNW<br><br>SCREENING ORDER |

Plaintiff, who is a prisoner in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed two applications to proceed *in forma pauperis*, a motion to amend the complaint, and an amended complaint (ECF No. 1, 3, 4, 4-1). The motion to amend the complaint (ECF No. 4) is granted.[1] The Court now screens Plaintiff's amended civil rights complaint pursuant to 28 U.S.C. § 1915A.[2]

## I. SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is

---

[1] An amended complaint replaces an earlier complaint. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989). Therefore, the operative complaint is the first amended complaint (ECF No. 4-1).

[2] The applications to proceed *in forma pauperis* (ECF No. 1, 3) will be denied as moot.

1

immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.     SCREENING OF COMPLAINT

In the First Amended Complaint ("FAC"), Plaintiff sues multiple defendants for events that took place while he was incarcerated by the Nevada Department of Corrections. (ECF No. 4-1 at 1). He sues the Offender Management Department ("O.M.D."), John Doe O.M.D. supervisor, John Doe O.M.D. timekeeper, Governor Jim Gibbons, John Doe Secretary of State, Director of NDOC J.G. Cox, Acting Warden of High Desert State Prison D. Neven, and caseworker Mark Drain (*Id.* at 2, 3, 12-13). Plaintiff alleges four causes of action and seeks monetary damages. (*Id.* at 22, 23).

3

The FAC alleges the following: Defendants implemented a policy that refused to apply parole credits pursuant to NRS § 209.4465(7)(b)[3] to category B violent offenders who were sentenced between 1997 and 2007.[4] (*Id.* at 14). Defendants deliberately disqualified Plaintiff and thousands of others from the correct application of the sentencing statute. (*Id.* at 21). They qualified only the category C non-violent offenders for the application of NRS § 209.4465(7)(b). (*Id.* at 21).

The O.M.D., John Doe supervisor and John Doe timekeeper illegally disqualified Plaintiff from the benefits of NRS § 209.4465(7)(b). (*Id.* at 15). Plaintiff was entitled to have his statutory credits applied to him under that statute.[5] (*Id.*) Defendants Gibbons and John Doe Secretary of State "acted in concert and as a check over the management of O.M.D., so their poor management resulted in Cox and Neves failure to enforce NRS § 209.4465(7)(b). (*Id.*) This resulted in Plaintiff not having statutory parole credits applied to his sentence for the possibility of early parole, as provided for by NRS § 209.4465(7)(b). (*Id.*)

---

[3] Section 209.4465(7)(b) provides that statutory time credits that have been earned by an inmate must apply to "eligibility for parole unless the offender was sentenced pursuant to a statute which specifies a minimum sentence that must be served before a person becomes eligible for parole."

[4] In 2007, NRS § 209.4465(8) explicitly made NRS § 209.4465(7)(b) inapplicable to category B offenders. Because Plaintiff allegedly was convicted of his category B offenses before 2007, NRS § 209.4465(8) is not at issue and the question is what impact, if any, the alleged violation of NRS § 209.4465(7)(b) had on Plaintiff's constitutional rights.

[5] Plaintiff cites to the Nevada Supreme Court's decisions in *Vonseydewitz v. Legrand*, Dkt No. 66159, 2015 WL 3936827 (Nev. June 24, 2015) (unpublished) and *Williams v. State Dep't of Corr.*, 402 P.3d 1260, 1262 (Nev. 2017), in support of this assertion. (ECF No. 4-1 at 14). In *Vonseydewitz*, the Nevada Supreme Court addressed the issue of whether the habeas petitioner was entitled to have good time credits applied to his eligibility for parole under NRS § 209.4465(7)(b). *Id.* Like many class B offenders, the petitioner had been sentenced for violating a statute that provided for a minimum term of two years but did not specify that a minimum number of years must be served before the offender was considered for parole. (*Id.* at *1). Plaintiff was not having good time credits applied to his parole eligibility date and that was the issue before the court. (*Id.* at **1-3 n. 2). The court held that, under NRS § 209.4465(7)(b), the petitioner was entitled to have the statutory time credits applied to his parole eligibility date, interpreting the statutory language to apply to certain offenders who had committed offenses that required minimum sentences but that did not explicitly require the offender to serve a minimum period of time before being considered for parole.[5] (*Id.* at **2-3). *Vonseydewitz* was an unpublished order that could not be cited as precedent. However, in a published opinion, the Nevada Supreme Court subsequently reached the same conclusion as it had in *Vonseydewitz*. *Williams v. State Dep't of Corr.*, 402 P.3d 1260, 1262 (Nev. 2017).

4

On May 5, 1999, Plaintiff entered into a plea agreement with the state. (*Id.*) The conditions of that contract were that Plaintiff would plead guilty to Count 1 (conspiracy to commit robbery) and Count 2 (robbery), with sentences to run concurrently. (*Id.*) In exchange, the State verbally promised Plaintiff that, if the sentencing court pronounced a sentence longer than the prescribed minimum two-year sentence, Plaintiff automatically would qualify for statutory parole credits being deducted from his sentence, making him eligible for the possibility of early parole. (*Id.* at 15-16). Plaintiff was sentenced to 6-15 years for robbery and an equal and consecutive term of 6-15 years for the use of a deadly weapon enhancement. (*Id.*)

On or about July 10, 1999, Plaintiff was processed into the Nevada state prison. (*Id.*) Plaintiff was not aware that Defendants O.M.D. John Doe supervisor, and John Doe timekeeper already had disqualified Plaintiff from the benefits of NRS § 209.4465(7)(b). (*Id.*)

In December of 1999, Plaintiff was involved in an assault and, as a result, was disciplined with the forfeiture of all statutory credits regarding his first sentence, which was the robbery sentence. (*Id.*) On or about April 4, 2005, after Plaintiff's parole hearing for robbery, Plaintiff spoke to Defendant Drain about the state's promise of statutory parole credits applying to his consecutive sentence for the use of a deadly weapon. (*Id.* at 17). Drain misinformed Plaintiff and told Plaintiff that he misunderstood the State's promise because category B offenders qualified only for the application of statutory credits to their maximum terms, not their minimum terms. (*Id.*) Drain advised Plaintiff to review his plea agreement contract and see if there was any promise to apply statutory credits to Plaintiff's minimum sentence. (*Id.*) Plaintiff could not find the language in his plea agreement and was then unaware of NRS § 209.4465(7)(b), the statute that supported the state's verbal promise to apply statutory credits to his minimum sentence. (*Id.*) Plaintiff was denied parole until the sentence expired on April 5, 2008. (*Id.* at 19).

On April 5, 2008, Plaintiff began serving his consecutive sentence for the use of a deadly weapon enhancement. (*Id.*) Defendants failed to apply statutory credits to that sentence and he therefore had his first parole hearing on that sentence on April 4, 2014, over two years late. (*Id.*) Plaintiff is currently incarcerated. (*Id.* at 1).

Plaintiff alleges four counts based on this alleged conduct.

### A. Count I

Count I of the FAC alleges the following: Defendants violated Plaintiff's "contract clause under the 14th Amendment of the U.S. Constitution." (ECF No. 4-1 at 22). In addition to citing the Contract Clause to the United States Constitution (Article 1, section 10 of the United States Constitution), Plaintiff cites state law. (*Id.*) The Court construes these allegations as a claim for violation of the Contract Clause of the United States Constitution and violation of the Nevada Constitution's contract clause. Plaintiff's Fourteenth Amendment claims are addressed in connection with Count II, III and IV.

#### *1. Contract Clause in United States Constitution*

The Contract Clause of the United States Constitution prohibits states from *passing laws* that impair the obligation of contracts. U.S. Const. art. I, § 10, cl. 1; *Ross v. State of Oregon,* 227 U.S. 150, 162–63 (1913) (Contract Clause applies to exercise of legislative authority). Plaintiff does not allege that the legislature has impaired his alleged contract with the state. Rather, he alleges that Defendants did not properly apply the law that was enacted by the legislature. Plaintiff therefore does not and cannot state a Contract Clause claim. The Court therefore dismisses this claim with prejudice.

#### *2. State Law Claims*

To the extent Plaintiff alleges that his rights under the Nevada's Constitution were violated, the Court does not have jurisdiction to address such claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a right secured by the Constitution or laws of the United States was violated. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 does not provide a cause of action for violations of state law. *See Galen v. County of Los Angeles,* 477 F.3d 652, 662 (9th Cir. 2007). Although this Court does not have

original jurisdiction over state law claims, under certain limited conditions it may choose to exercise supplemental jurisdiction over a plaintiff's state-law claims if they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Court need not address the viability of Plaintiff's state law claim because it cannot exercise supplemental jurisdiction over any state law claim unless and until Plaintiff states a related and cognizable federal claim. *Cf.* 28 U.S.C. § 1367(a); *Herman Family Revocable Trust v. Teddy Bear,* 254 F.3d 802, 805 (9th Cir. 2001). Because the complaint does not state a related colorable federal claim, the Court will dismiss the state law contract clause claim without prejudice.

**B. Count II**

Count II of the FAC alleges that Defendants violated his right to due process under the Fifth Amendment, Sixth Amendment, and Fourteenth Amendment to the United States Constitution and violates Article 1, section 8 of the Nevada Constitution. (ECF No. 4-1 at 22). In Count IV, Plaintiff also alleges a due process claim based on the exact same factual allegations. The Court construes Count II as alleging a due process claim and a state law claim based on an alleged breach of contract, and it construes Count IV as alleging a due process claim based on an alleged violation of state law.

"Due process rights conferred by the federal constitution allow [a defendant] to enforce the terms of [his] plea agreement." *Brown v. Poole,* 337 F.3d 1155, 1159 (9th Cir. 2003). When a plea agreement rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled. *Santobello v. New York,* 404 U.S. 257, 262 (1971). In *Santobello*, the Supreme Court held that the remedies available for the breach of a plea agreement were either specific performance of the agreement or rescission of the entire agreement and withdrawal of the guilty plea. *Id.* at 263; *see also Fox v. Johnson*, 832 F.3d 978, 987–88 (9th Cir. 2016).

7

Here, specific performance is impossible as Plaintiff already has served the robbery sentences and already had his first parole hearing on the consecutive sentence. Thus, the only possible remedy is rescission of the plea agreement and withdrawal of the guilty plea. However, such a remedy is not available in a § 1983 claim and Plaintiff may not bring a claim challenging the validation of a conviction in a § 1983 claim but must instead pursue such a claim and remedy in a habeas action. *Heck v. Humphrey*, 512 U.S. 477, 478–79 (1994); *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *Nettles v. Grounds*, 830 F.3d 922, 928 (9th Cir. 2016). The Court therefore dismisses this claim without prejudice and without leave to amend.[6]

Because the Court does not have jurisdiction over the state law claim, that claim is dismissed without prejudice and without leave to amend.

### C. Count III

Plaintiff alleges that Defendants violated his Fifth Amendment and Fourteenth Amendment right to equal protection. (ECF No. 4-1 at 22). The Court construes this count as a claim for violation of the Fourteenth Amendment's Equal Protection Clause.

Plaintiff appears to allege that a violation of his rights under NRS § 209.4465(7)(b) violates his Fourteenth Amendment right to equal protection of the law. (*Id.* at 5). An alleged violation of state law is not sufficient to state a colorable equal protection claim. *Cf. Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In order to state an equal protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to treat him differently than *similarly situated* persons. *Id.* Plaintiff alleges that he was convicted of a violent category B offense and that he was treated *the same* as thousands of other violent category B offenders. He therefore does not and cannot state a colorable equal

---

[6] The Court need not and does not determine whether Defendants were parties to the alleged plea agreement contract. It also need not and does not determine whether the allegations are sufficient to allege a valid agreement or that the alleged promise induced Plaintiff's guilty pleas. The Court also need not and does not address whether the alleged disciplinary revocation of credits rendered any such agreement irrelevant for the first sentence.

protection claim. Accordingly, the Court dismisses the equal protection claim with prejudice, as amendment would be futile.

**D. Count IV**

Count IV of the FAC alleges that Defendants violated Plaintiff's Fourteenth Amendment due process rights by violating his rights under state law. (ECF No. 4-1 at 22).

However, allegations that a defendant violated state law are not sufficient to state a claim for violation of the Fourteenth Amendment's due process clause. *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011); *see also Young v. Williams*, No. 2:11-CV-01532-KJD, 2012 WL 1984968, at *3 (D. Nev. June 4, 2012) (holding that alleged error in applying good time credits to sentence was an error of state law that did not constitute a due process violation). In order to state a Fourteenth Amendment due process claim, a plaintiff must adequately allege that he was denied a specified liberty interest and that he was deprived of that liberty interest without the constitutionally required procedures. *Swarthout*, 562 U.S. at 219.

Thus, Plaintiff's allegations that Defendants violated state law are not sufficient to state a due process claim. Furthermore, Nevada state prisoners do not have a liberty interest in the discretionary grant of parole or in eligibility for such parole. *See Moor v. Palmer*, 603 F.3d 658, 661-62 (9th Cir. 2010).

It appears from the FAC that Plaintiff may believe that, if he has a right under state law to have credits applied to his parole eligibility date and be considered for parole, then he has a liberty interest in having credits applied to his parole eligibility date. (ECF No. 4-1 at 19-20).

In some circumstances, state statutory requirements mandating the treatment of good time credits in particular ways will necessarily impact the duration of the prisoner's confinement. The revocation of good time credits sometimes may fall into this category. In such circumstances, the prisoner may have a liberty interest in a "shortened sentence."

9

*Sandin v. Conner*, 515 U.S. 472, 477 (1995). However, the Supreme Court has held that, even when a state statute uses mandatory language, a state can create a liberty interest that invokes procedural protections under the Due Process Clause only if the state's action "will *inevitably* affect the duration of his sentence" or if there are prison conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 487 (emphasis added).

Here, the issue is whether the allegedly erroneous application of NRS § 209.4465(7)(b) inevitably affected the duration of Plaintiff's sentences. It did not. That statutory subsection affected only when Plaintiff would be considered for parole, not when he would be entitled to be released. In Nevada, the decision whether to grant parole is highly discretionary and the person seeking parole is not entitled to parole. NRS 213.1099(1), (2); *Moor v. Palmer*, 603 F.3d 658, 661–62 (9th Cir. 2010). Thus, an earlier parole eligibility date does not inevitably affect the duration of a prisoner's sentence. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (holding that speeding up *consideration* for parole does not necessarily imply the invalidity of the duration of the prisoner's sentence); *Klein v. Coblentz*, 1997 WL 7675384, *4 (10th Cir. 1995) (relying on *Sandin* to hold that, where good time credits applied under state law only to determining the prisoner's parole eligibility date and not to a sentence reduction, the loss of credits did not inevitably increase the duration of the sentence and there was no liberty interest giving rise to due process protections); *Dodge v. Shoemaker*, 695 F. Supp. 2d 1127, 1139 (D. Colo. 2010). Therefore, Plaintiff does not adequately allege a liberty interest and does not and cannot state a due process claim.

Because Plaintiff does not state a cognizable Fourteenth Amendment due process claim, the Court does not have jurisdiction to consider the state law claim. The Court therefore dismisses the state law claim without prejudice and without leave to amend.

/ / /

/ / /

10

## III. CONCLUSION

For the foregoing reasons, it is ordered that the motion for leave to amend the complaint (ECF No. 4) is granted.

It is further ordered that the operative complaint is the first amended complaint (ECF No. 4-1) and the Clerk of the Court will file will send Plaintiff a courtesy copy of the first amended complaint.

It is further ordered that the federal Contract Clause claim in Count I, the Fourteenth Amendment equal protection claim in Count III, and the Fourteenth Amendment due process claim in Count IV are dismissed with prejudice, as amendment would be futile.

It is further ordered that the Fourteenth Amendment due process claim in Count II is dismissed without prejudice and without leave to amend.

It is further ordered that the state law claims are dismissed without prejudice and without leave to amend.

It is further ordered that the applications to proceed *in forma pauperis* (ECF No. 1, 3) are denied as moot.

It is further ordered that the Clerk of the Court shall enter judgment accordingly and close this case.

DATED THIS 18 day of June 2019.

_____
GLORIA M. NAVARRO, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE